FILED
JAMES BONINI
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**      09 NOV 27  AM 11: 40

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | | |
|---|---|---|
| MICHAEL KEETON<br>218 Florence Avenue<br>Jackson, Ohio, 45640<br>on behalf of himself and all others<br>similarly situated, | : <br>: <br>: <br>: <br>: <br>: | Case No.: **2 : 0 9 cv 1 0 8 5** |
| and | : <br>: | |
| EDEN TAYLOR,<br>381 Sand Hill Road<br>Wellston, OH 45692,<br>on behalf of himself and all others<br>similarly situated, | : <br>: <br>: <br>: <br>: | **JUDGE MARBLEY**<br><br>Judge: |
| and | : <br>: | Magistrate Judge:<br>**MAGISTRATE JUDGE ABEL** |
| SHAWN TAYLOR,<br>1905 Clary Road<br>Jackson, OH 45640,<br>on behalf of himself and all others<br>similarly situated, | : <br>: <br>: <br>: <br>: | |
| and | : <br>: | **CLASS ACTION COMPLAINT** |
| THOMAS DENNEY,<br>283 W. 13th St., Lot No. 4<br>Wellston, OH 45692,<br>on behalf of himself and all others<br>similarly situated, | : <br>: <br>: <br>: <br>: | |
| Plaintiffs, | : <br>: | **JURY DEMAND ENDORSED HEREON** |
| v. | : <br>: | |
| TIME WARNER CABLE INC.,<br>60 Columbus Circle, 17th Floor<br>New York, NY 10023, | : <br>: <br>: <br>: | |
| Defendant. | : <br>: | |

## COLLECTIVE ACTION COMPLAINT FOR DECLARATORY JUDGMENT AND COMPENSATION UNDER 29 U.S.C. § 201, *ET SEQ.*, AND CLASS ACTION COMPLAINT UNDER O.R.C. CHAPTER 4111, *ET SEQ.*

Plaintiffs, on behalf of themselves and all similarly situated individuals, bring this collective and class action against Defendant Time Warner Cable Inc. for monetary, declaratory, and injunctive relief due to its willful failure to compensate employees with overtime pay in violation of the Federal Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and The Ohio Minimum Wage Act ["OMWA"], O.R.C. §§ 4111.01, *et seq.*, committed by dividing, as a practical matter, its installation workforce into "apparent" employees and "contract" employees and intentionally mischaracterizing the latter as independent contractors or employees of independent contractors, rather than joint employees, in order to evade federal and Ohio duties owed to joint employees.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337(a) (statutory regulation of commerce) and 29 U.S.C. § 216(b).

2.     This Court has supplemental jurisdiction over Plaintiff's OMWA claim pursuant to 28 U.S.C. § 1367.

3.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1(b) because Plaintiffs performed nearly all of their job duties for Defendant in counties located in the Eastern District.

### PARTIES

4.     Plaintiff Michael Keeton is an individual residing at 218 Florence Ave. in Jackson, Ohio.  From March or April of 2008 until August of 2008, Mr. Keeton was jointly employed by Defendant and Reno Services, LLC and/or Defendant and McIntyre

Communications, LLC, as an installer of Defendant's cable, internet, telephone, and related services. Mr. Keeton's notice of consent has been filed with this Court contemporaneously with this Complaint in accord with 29 U.S.C. § 216(b).

5.    Plaintiff Eden Taylor is an individual residing at 381 Sand Hill Road, Wellston, Ohio, 45692. From approximately August 2006 until February 2008, Mr. Eden Taylor was jointly employed by Defendant and Reno Services, LLC, as an installer of Defendant's cable, internet, and related services. Mr. Eden Taylors's notice of consent has been filed with this Court contemporaneously with this Complaint in accord with 29 U.S.C. § 216(b).

6.    Plaintiff Shawn Taylor is an individual residing at 1905 Clary Road, Jackson, Ohio, 45640. From December 15, 2006, until June 12, 2008, Mr. Shawn Taylor was jointly employed by Defendant and Reno Services, LLC, as an installer of Defendant's cable, internet, telephone, and related services. Mr. Shawn Taylor's notice of consent has been filed with this Court contemporaneously with this Complaint in accord with 29 U.S.C. § 216(b).

7.    Plaintiff Thomas Denney is an individual residing at 283 W. 13th St., Lot No. 4, Wellston, Ohio, 45692. From February 12, 2007, until June 12, 2008, Mr. Denney was jointly employed by Defendant and Reno Services, LLC, as an installer of Defendant's cable, internet, telephone, and related services. Mr. Denney's notice of consent has been filed with this Court contemporaneously with this Complaint in accord with 29 U.S.C. § 216(b).

8.    The named Plaintiffs bring this collective and class action on their own behalf and on behalf of those similarly situated by virtue of Defendant's nationwide division, as a practical matter, of its installation workforce into "apparent" employees and "contract" employees and its intentional mischaracterization of the latter as independent contractors or employees of independent contractors, rather than joint employees under the FLSA and OMWA.

9.     At all times material to this Complaint, Defendant Time Warner Cable Inc. owned and managed cable systems providing approximately 14.7 million customers video, high-speed data, and residential telephone services in 33 States; was an "employer" and "enterprise regularly engaged in interstate commerce" as defined in the FLSA, 29 U.S.C. § 203, and an "employer" within the meaning of OMWA, O.R.C. § 4111.01(C); divided, as a practical matter, its installation workforce into "apparent" employees and "contract" employees; characterized the latter as independent contractors or employees of independent contractors; and paid overtime only to its "apparent" employees.

## DEFENDANT'S COMMON BUSINESS PRACTICES

10.     Defendant adheres throughout its operations to a uniform division, as a practical matter, of its installation workforce into "apparent" employees – those directly employed by Defendant and concededly covered by the FLSA and the OMWA or its counterpart in the State where installation is performed – and "contract" employees – those either contracting with Defendant or directly employed by contractors with Defendant and treated as not covered by the FLSA and the OMWA or its counterpart in the State where installation is performed.

11.     Installation of cable, internet, telephone, and related services is essential to the Defendant's business.

12.     Defendant adheres throughout its operations to a uniform approach to securing, assigning, monitoring, and compensating "contract" employees within its installation workforce.

13.     Defendant hires as direct employees installers who perform all the same tasks as its "contract" employees, and Plaintiffs and individuals similarly situated in all material respects to Plaintiffs would regularly perform tasks that had been initially assigned to a direct employee

and, due to such factors as a scheduling conflict or unforeseen problem, not performed by that direct employee.

14.     Defendant limits its number of direct employees by distributing the installation workload to its "contract" employees.

15.     In the geographical area where Plaintiffs worked and around the period when Plaintiffs were "contract" employees for Defendant, it entered into contracts with several entities, including Reno Services, LLC; Gold Key; Precision Broadband; McIntyre; Cable Express; and Ceebee, which then hired Plaintiffs or individuals similarly situated in all material respects to Plaintiffs to install Defendant's cable, internet, telephone, and related services and paid their employees on a W-2 basis or independent contractor basis.

16.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs typically started their work day by traveling in trucks or vans provided by their direct employers from their homes to whichever of Defendant's offices, including those in Wellston, Jackson, Chillicothe, Portsmouth, Lancaster, and Athens, they had been assigned for that day.

17.     Occasionally, some of those individuals had lost the privilege of having a truck or van at their home and would travel by their own transportation to whichever of Defendant's offices at which their truck or van was parked.

18.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were required early in their employment by Defendant to arrive at whichever of Defendant's offices they had been assigned for that day by 7:00 a.m. and later in their employment by 8:00 a.m. and receive work orders then from Defendant.

19.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were assigned by Defendant a specific installer number.

20.     Defendant provided work orders to Plaintiffs and individuals similarly situated in all material respects to Plaintiffs with each employee's specific installer number on each order.

21.     Defendant assigned to each work order one of four timeframes – 8:00 a.m. to 10:00 a.m.; 10:00 a.m. to 12:00 p.m.; 12:00 p.m. to 4:00 p.m.; or 4:00 p.m. to 7:00 p.m. – in which the tasks listed on the order had to be performed.

22.     Defendant had Plaintiffs and individuals similarly situated in all material respects to Plaintiffs secure from its warehouse adjacent to whichever of Defendant's offices they had been assigned for that day the equipment necessary to perform the tasks listed and required them to use only the equipment supplied by Defendant.

23.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs signed out from Defendant the equipment necessary to perform the tasks listed.

24.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were provided by their direct employers a truck or van and nearly all the tools needed to perform the job tasks listed on the work orders as well as a cell telephone, though Defendant provided them with special tools, such as a hammer drill or a wall fish kit, and access on its office computer to MapQuest, when needed.

25.     Defendant provided Plaintiffs and individuals similarly situated in all material respects to Plaintiffs equipment, such as cable wire, needed to perform most of the job tasks listed on the work orders and controlled the keys to lock boxes that for many orders had to be accessed to perform those tasks.

26.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were responsible for fueling their truck or van and received either gas cards or reimbursement from their direct employers.

27.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were responsible for taking their truck or van for maintenance or repair as arranged and paid by their direct employer.

28.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs cleaned their trucks of old equipment that had been replaced, cable wire that had been removed, and other trash created in performing a job task by using the dumpster at whichever of Defendant's office they were assigned that day.

29.     Early in their employment, before leaving whichever of Defendant's offices Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had been assigned for that day, they had to complete and submit to Defendant a routing sheet reflecting the sequence in which they would travel to the customers for whom they had work orders, while later in their employment Defendant imposed a routing sequence loaded onto their Palm Pilot personal digital assistant.

30.     Upon leaving whichever of Defendant's offices Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had been assigned for that day, they traveled to the first customer on the routing sheet.

31.     When they arrived at the first customer on the routing sheet, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs logged in the time on the work order.

32.     If a customer was available, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs normally performed the job tasks in the work order and placed the codes Defendant established for those job tasks on the work order.

33.     Upon completing the job tasks in the work order, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs would call Defendant's dispatcher when services had to be activated, and, after checking the customer's services to ensure they had been activated, accept payment for the amount Defendant indicated on the work order and provide brochures or other information the customer.

34.     Before they left a customer's location, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had to be cleared by Defendant's dispatcher.

35.     While waiting to be cleared by Defendant's dispatcher, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had to log off the time on the work order, omitting the time spent waiting to have the services activated and to be cleared by Defendant's dispatcher.

36.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs would then travel to the next customer on the routing sheet.

37.     If a customer was unavailable, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs would attempt to contact the customer by telephone and, unless that succeeded, would call Defendant's dispatcher who would then attempt to contact the customer by telephone.

38.     Defendant paid Plaintiffs and individuals similarly situated in all material respects to Plaintiffs through their direct employer or based on a contract with them.

39.     Defendant typically paid Plaintiffs and individuals similarly situated in all material respects to Plaintiffs for only the job tasks on the work order and only for the anticipated amount of time or units each task Defendant assigned.

40.     Defendant did not pay Plaintiffs and individuals similarly situated in all material respects to Plaintiffs based on the actual amount of time each task took.

41.     Defendant did not pay Plaintiffs and individuals similarly situated in all material respects to Plaintiffs for any work they performed before or after they left a customer's location.

42.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were not permitted by Defendant to switch customers among timeframes even when a more efficient routing would have resulted and the customers would have been willing to switch.

43.     On a daily basis, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were to provide their direct employer and Defendant the completed work orders that reflected the job tasks they had performed.

44.     When they had completed all the work orders Defendant had given them, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had to call Defendant's dispatcher to finish their work day.

45.     On a regular basis, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs would be requested by Defendant's dispatcher to accept additional work orders, usually due to the absence of another installer.

46.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs felt pressure to accept a request from Defendant's dispatcher to accept additional work orders.

47.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs typically worked six days a week and ten-hour days, timing their work from when they reported to whichever of Defendant's offices they had been assigned for that day until they were cleared to be off by Defendant's dispatcher.

48.    The compensation Plaintiffs and individuals similarly situated in all material respects to Plaintiffs received for each job task they performed was substantially below the amount they would have earned had they been paid for the hours they actually worked.

49.    Specifically, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs did not receive overtime pay even though they regularly worked 60-70 hours a week.

50.    Plaintiffs and individuals similarly situated in all material respects to Plaintiffs wore clothing reflecting the name of their direct employer; used trucks with that name along with a magnetic sign that the direct employer was a contractor for Defendant; and had a identity card with the installer number issued by Defendant and a photograph, stating they were an employee of the direct employer which contracted with Defendant.

51.    Defendant once distributed to some Plaintiffs and individuals similarly situated in all material respects to Plaintiffs hats with its logo and name.

52.    Within months after distributing hats with its logo and name, Defendant instructed those Plaintiffs and individuals similarly situated in all material respects to Plaintiffs who received the hats that they could no longer wear them.

53.    Plaintiffs and individuals similarly situated in all material respects to Plaintiffs routinely introduced themselves to Defendant's customers by saying they were from "Time Warner" and the entity which directly employed them.

54.    Defendant neither instructed Plaintiffs and individuals similarly situated in all material respects to Plaintiffs on how they should introduce themselves to its customers nor contracted with the entities which directly employed them on how they should introduce themselves.

55.     One or more Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had been wearing shorts during warm weather to work, and Defendant instructed each or the direct employer that shorts could not be worn.

56.     The job tasks performed by Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were subject to quality control monitoring by Defendant, which performed at least five quality control inspections each week.

57.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs did not receive formal training; however, they learned from Defendant's quality control checkers when they had performed well or poorly.

58.     Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had to perform all job tasks to Defendant's specifications.

59.     At short meetings once or twice a month, Defendant would distribute to or tell Plaintiffs and individuals similarly situated in all material respects to Plaintiffs about changes in the methods job tasks were to be performed.

60.     If, while performing a job task on a work order, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had a problem completing that task, they called for guidance Defendant's dispatcher or a lead technician or supervisor employed by Defendant.

61.     Any substantive or scheduling changes in a work order of Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had to be approved by Defendant's dispatcher or a supervisor employed by Defendant.

62.     Problems reported by a customer or through a quality control inspection with a job task performed by Plaintiffs and individuals similarly situated in all material respects to

Plaintiffs were assigned to the same installer who was given seven days to resolve the problem and report its resolution to Defendant's dispatcher or else be back-charged for any compensation already slated for that task.

63.     Defendant did not pay that installer for the time spent on resolving the problem and, if it was resolved, did not change the amount the installer had received for that task.

64.     When Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had to leave work during the timeframes for which they had work orders, whether by prearrangement or on an emergency basis, they had to notify Defendant's dispatcher or a supervisor employed by Defendant and be relieved from those work orders.

65.     When Plaintiffs and individuals similarly situated in all material respects to Plaintiffs had not completed tasks in the timeframe reflected on their routing sheet, Defendant would contact them and secure an estimate of when they would arrive at the remaining locations.

66.     The job tasks Plaintiffs and individuals similarly situated in all material respects to Plaintiffs performed were performed in the same way Defendant's direct employees given such tasks performed them.

67.     Defendant's direct employees were paid overtime if the job tasks they performed required more time than anticipated in the work orders.

68.     At all times material to this Complaint, Defendant knew from communications between Plaintiffs and individuals similarly situated in all material respects to Plaintiffs with its dispatcher or supervisor; the work orders initially given and then completed; and Defendant's knowledge of the locations and nature of the job tasks that Plaintiffs and individuals similarly situated in all material respects to Plaintiffs worked substantially more than forty hours a week.

69.     Before the entities with which Defendant had a contract and which then hired Plaintiffs or individuals similarly situated in all material respects to Plaintiffs to install Defendant's cable, internet, telephone, and related services could expand their workforce with another installer they required permission from Defendant to do so.

70.     When Defendant deemed an installer's job performance inadequate, Defendant would notify those entities to discharge that installer.

71.     Defendant knew that the entities with which it entered contracts deferred to Defendant for employment decisions about whether those entities should retain their employees.

72.     Supervisors employed by Defendant would counsel and verbally reprimand those Plaintiffs and individuals similarly situated in all material respects to Plaintiffs who had not performed their job tasks in a timely or appropriate manner.

73.     If Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were able to complete their work orders for a particular timeframe and had time to perform other work orders, they would call Defendant's dispatcher to see whether other work orders were available to be performed.

74.     Work orders typically took longer to perform than Defendant had predicted and Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were, therefore, often late to a customer's location, so they were rarely able to add work.

75.     When customers were unavailable, Plaintiffs and individuals similarly situated in all material respects to Plaintiffs would secure approval from Defendant's dispatcher to designate a "not done status" on the work order.

76.     Apart from a token amount to cover gasoline for traveling to locations where customers were unavailable, Defendant did not compensate Plaintiffs and individuals similarly situated in all material respects to Plaintiffs for their time on "not done status" work orders.

77.     Defendant knew that Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were often late to a customer's location from communications between them and its dispatcher or supervisor; the work orders initially given and then completed; Defendant's knowledge of the locations and nature of the job tasks; and, when applicable, a $20 credit given by Defendant to any customer whose installer had been late.

78.     The work orders Defendant gave to Plaintiffs and individuals similarly situated in all material respects to Plaintiffs combined with supplemental work assigned by Defendant's dispatcher took so much time that they could not perform services for any other employer.

79.     At all times material to this Complaint, Defendant knew from communications between Plaintiffs and individuals similarly situated in all material respects to Plaintiffs with its dispatcher or supervisor; the work orders initially given and then completed; and Defendant's knowledge of the locations and nature of the job tasks that Plaintiffs and individuals similarly situated in all material respects to Plaintiffs were effectively precluded from performing services for any other employer.

80.     At all times relevant to this Complaint, Defendant adhered to a uniform policy that trucks or vans used by its "contract" employees in its installation workforce had a gross vehicle weight of less than 10,001 pounds; were not designed or used to transport more than eight passengers for any reason; were not used to transport hazardous materials; and were not "commercial motor vehicles" as defined by the federal Motor Carrier Act, 49 U.S.C. §31132(1),

as that law was in effect from August 10, 2005, through June 6, 2008, and, instead, were "Non-Commercial Vehicles."

81.     As a direct result of Defendant's uniform approach throughout its operations to securing, assigning, monitoring, and compensating "contract" employees within its installation workforce, it willfully paid its "contract" employees on a piecework basis by the job tasks they completed from its work orders and did not pay them either for all the hours they worked or overtime pay for hours worked in excess of forty hours per week despite the fact that it knew "contract" employees were working well in excess of forty hours per week.

82.     At all times material to this complaint, Defendant's uniform approach throughout its operations to securing, assigning, monitoring, and compensating "contract" employees within its installation workforce was intentionally used to evade its obligations under the FLSA and OMWA or its counterpart in the State where installation was performed.

## COLLECTIVE ACTION AND CLASS ALLEGATIONS

83.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a collective action for unpaid wages and overtime under the FLSA, 29 U.S.C. § 216(b).

84.     The collective class, or Opt-In Class, which Plaintiffs seek to represent is composed of and defined as follows ["Collective Class"]:

> All current or former installers jointly employed during the past three
> years by Defendant and entities with which it contracted who worked
> more than 40 hours a week and were compensated for such overtime work
> at an amount equaling less than one and one-half times the employee's
> regular rate of pay based on a 40-hour workweek.

85.     Plaintiffs bring their OMWA claims pursuant to Federal Rule of Civil Procedure 23 as a class action under Ohio law on behalf of the following class ["Rule 23 Class"]:

> All current or former installers jointly employed in Ohio during the past three
> years by Defendant and entities with which it contracted who worked more than

40 hours a week and were compensated for such overtime work at an amount equaling less than one and one-half times the employee's regular rate of pay based on a 40-hour workweek.

86.   The Collective Class and the Rule 23 Class, as defined above, are so numerous that joinder of all members is impracticable.

87.   Plaintiffs are members of the Collective Class and the Rule 23 Class and their claims are typical of the claims of the members of the Collective Class and the Rule 23 Class as defined; indeed, apart from the specific number of hours worked and amount of compensation due, the Plaintiffs are similarly situated in all material respects, including nature of job tasks, skills, job performance, and the uniform policies and practices of Defendant in securing, assigning, monitoring, and compensating "contract" employees within its installation workforce,

88.   Plaintiffs will fairly and adequately represent the Collective Class and the Rule 23 Class and the interests of all members of the Collective Class and the Rule 23 Class.

89.   Plaintiffs have no interest that is antagonistic to or in conflict with those interests that they have undertaken to represent of the Collective Class and the Rule 23 Class as Class Representatives; instead, their interests perfectly coincide with those of individuals similarly situated in all material respects.

90.   Plaintiffs have retained competent and experienced class action counsel who are able to effectively represent the interests of the entire Collective Class and the Rule 23 Class.

91.   Questions of law and fact that are common to the Collective Class and the Rule 23 Class predominate over any individual questions, specifically whether Defendant was a joint employer of Plaintiffs and individuals similarly situated in all material respects to Plaintiffs and whether they were subject to any exemption from the FLSA or OMWA.

92.    In both the Collective Class and the Rule 23 Class there is a community of interest among the class members in obtaining appropriate declaratory and injunctive relief, damages, and compensation for costs and fees incurred herein.

93.    A collective action for the federal overtime claim and a Rule 23 class action for the Ohio overtime claim are superior to other litigation methods (including individual litigation) for the fair and efficient adjudication of Plaintiffs' claims as presented by this Complaint and will prevent undue financial, administrative, and procedural burdens on the parties and the Court.

94.    Plaintiffs and their counsel are not aware of any pending Ohio litigation on behalf of the Collective Class and the Rule 23 Class, as defined herein, or individual Class members related to these claims.

95.    Because the damages sustained by individual members of the Class are modest compared to the substantial resources of Defendant and due to the costs of individual litigation, it will be impracticable for Class members to pursue individual litigation against Defendant in order to vindicate their rights, and individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to its employees.

96.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Collective Class or a Rule 23 Class.

## COUNT I

97.    All previous paragraphs are incorporated as though fully set forth herein.

98.    By not paying one-and-one-half times the regular hourly rate to Plaintiffs and similarly situated individuals for hours worked in excess of forty hours each week, Defendant violated the FLSA.

99.   In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COUNT II

100.   All previous paragraphs are incorporated as though fully set forth herein.

101.   By not paying one-and-one-half times the regular hourly rate to Plaintiffs and similarly situated individuals for hours worked in excess of forty hours each week, Defendant violated the OMWA.

102.   In violating the OMWA, Defendant acted willfully and with reckless disregard of clearly applicable OMWA provisions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class are entitled to and pray for the following relief:

A.   An order permitting this litigation to proceed as a representative action and a class action;

B.   Prompt notice, pursuant to 29 U.S.C. § 216(b), to all collective action class members that this litigation is pending and that they have the right to "opt in" to this litigation;

C.   An injunction prohibiting Defendant from engaging in future overtime violations;

D.   With respect to Plaintiff and each Class Member, compensatory damages in an amount equal to the difference between the time-and-a-half payments required under the FLSA and the OMWA and the amount of compensation actually paid by Defendant;

E.   Liquidated damages to the fullest extent permitted under federal and state law; and

F.   Costs and attorneys' fees to the fullest extent permitted under federal and state law.

Respectfully submitted,


John S. Marshall (0015160)
(*jmarshall@marshallandmorrow.net*)
Edward R. Forman (0076651)
(*eforman@marshallandmorrow.net*)
MARSHALL AND MORROW LLC
111 West Rich Street, Suite 430
Columbus, Ohio  43215-5296
(614) 463-9790
Fax (614) 463-9780

Robert DeRose (0055214)
(*bderose@barkanneff.com*)
Robert K. Handelman (0019589)
(*bobhandelman@ameritech.net*)
BARKAN, NEFF, HANDLEMAN, MEIZLISH
360 South Grant Avenue
P.O. Box 1989
Columbus, Ohio 43216-1989
(614) 221-4221
Fax (614) 221-5808

OF COUNSEL:

Louis A. Jacobs (0002101) (*LAJOhio@aol.com*)
66871 Rayo Del Sol
Desert Hot Springs, CA  92240-1871
(614) 203-1255
Fax (760) 288-2146


**JURY DEMAND**

Plaintiff requests a trial by a jury of eight (8) persons.


John S. Marshall

## CONSENT TO BRING 29 U.S.C SEC. 216 (b) ACTION

I hereby consent to joining a civil action in the United States District Court for the Southern District of Ohio, Eastern Division, styled as Keeton et al. v. Time Warner Cable to recover unpaid compensation, additional damages and costs under 29 U.S.C. Sec. 216(b) and Ohio Law, and be represented by John S. Marshall and Edward R. Forman of MARSHALL AND MORROW LLC and Robert E. DeRose of BARKAN, NEFF, HANDELMAN MEIZLISH for the purpose of bringing of such action.

11-19-09
**DATE**

Thomas S Denning
**SIGNATURE**

Thomas S Denney
**NAME (Printed)**

installer
**JOB TITLE**

This consent form may be photocopied

## CONSENT TO BRING 29 U.S.C SEC. 216 (b) ACTION

I hereby consent to joining a civil action in the United States District Court for the Southern District of Ohio, Eastern Division, styled as Keeton et al. v. Time Warner Cable to recover unpaid compensation, additional damages and costs under 29 U.S.C. Sec. 216(b) and Ohio Law, and be represented by John S. Marshall and Edward R. Forman of MARSHALL AND MORROW LLC and Robert E. DeRose of BARKAN, NEFF, HANDELMAN MEIZLISH for the purpose of bringing of such action.

11-19-09
DATE

*Eden Taylor*
SIGNATURE

*Eden Taylor*
NAME (Printed)

*Installer*
JOB TITLE

This consent form may be photocopied

## CONSENT TO BRING 29 U.S.C SEC. 216 (b) ACTION

I hereby consent to joining a civil action in the United States District Court for the Southern District of Ohio, Eastern Division, styled as Keeton et al. v. Time Warner Cable to recover unpaid compensation, additional damages and costs under 29 U.S.C. Sec. 216(b) and Ohio Law, and be represented by John S. Marshall and Edward R. Forman of MARSHALL AND MORROW LLC and Robert E. DeRose of BARKAN, NEFF, HANDELMAN MEIZLISH for the purpose of bringing of such action.

11-19-09
**DATE**

Shawn M. Taylor
**SIGNATURE**

Shawn M. Taylor
**NAME (Printed)**

unemployed
**JOB TITLE**

This consent form may be photocopied

## CONSENT TO BRING 29 U.S.C SEC. 216 (b) ACTION

I hereby consent to joining a civil action in the United States District Court for the Southern District of Ohio, Eastern Division, styled as Keeton et al. v. Time Warner Cable to recover unpaid compensation, additional damages and costs under 29 U.S.C. Sec. 216(b) and Ohio Law, and be represented by John S. Marshall and Edward R. Forman of MARSHALL AND MORROW LLC and Robert E. DeRose of BARKAN, NEFF, HANDELMAN MEIZLISH for the purpose of bringing of such action.

11/19/09
DATE

_Michael Keeton_
SIGNATURE

Michael Keeton
NAME (Printed)

Cable Installer
JOB TITLE

This consent form may be photocopied