## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL KEETON, EDEN TAYLOR, SHAWN TAYLOR, THOMAS DENNEY, individuals, on behalf of themselves and all similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>TIME WARNER CABLE INC.<br><br>and<br><br>TIME WARNER CABLE, LLC,<br><br>Defendants. | Case No. 2:09CV1085-ALM-MRA<br><br>**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAM OF DEFENDANTS TIME WARNER CABLE INC. AND TIME WARNER CABLE LLC TO PLAINTIFFS' SECOND AMENDED COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED AS TO DEFEDANTS' COUNTERCLAIM** |

Defendants Time Warner Cable Inc.[1] and Time Warner Cable LLC (collectively, "Defendants") hereby submit their Answer, Affirmative Defenses and Counterclaim to Plaintiffs Michael Keeton, Eden Taylor, Shawn Taylor and Thomas Denney's (collectively "Plaintiffs") Second Amended Collective Action and Class Action Complaint ("Complaint"), as follows:

## ANSWER

The allegations in Plaintiffs' Introductory Paragraph contain legal conclusions to which no response is required by Defendants. To the extent this

---

[1] Plaintiffs incorrectly name "Time Warner Cable Inc." as a Defendant. The entity that contracted with Plaintiffs' employer Reno Services, LLC ("Reno Services") was Time Warner Cable LLC.

paragraph contains any allegations to which a response is required, Defendants deny those allegations. Defendants expressly deny that they divided their installation workforce into "apparent" employees and "contract" employees, that they jointly employed any independent contractors' laborers, or that they attempted to evade federal and Ohio duties owed to employees.

## JURISDICTION AND VENUE

1.     Defendants admit that this Court has subject matter jurisdiction over this action.

2.     Defendants admit that this Court has supplemental jurisdiction over Plaintiffs' Ohio Minimum Wage Act ("OMWA") claim.

3.     Defendants admit that venue is proper in this District. Defendants deny that Plaintiffs were ever employees of Defendants. Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 3 of the Complaint and therefore deny same.

## PARTIES

4.     Defendants deny that they employed Plaintiff Keeton, jointly or otherwise. Moreover, Defendants deny the allegations in Paragraph 4 to the extent they are inconsistent with Plaintiff Keeton's notice of consent attached to the Complaint, which speaks for itself. Defendants lack sufficient knowledge to

admit or deny the remaining allegations contained in Paragraph 4 of the Complaint and therefore deny same.

5.      Defendants deny that they employed Plaintiff Eden Taylor, jointly or otherwise.  Moreover, Defendants deny the allegations in Paragraph 5 to the extent they are inconsistent with Plaintiff Eden Taylor's notice of consent attached to the Complaint, which speaks for itself.  Defendants lack sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 5 of the Complaint and therefore deny same.

6.      Defendants deny that they employed Plaintiff Shawn Taylor, jointly or otherwise.  Moreover, Defendants deny the allegations in Paragraph 6 to the extent they are inconsistent with Plaintiff Shawn Taylor's notice of consent attached to the Complaint, which speaks for itself.  Defendants lack sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 6 of the Complaint and therefore deny same.

7.      Defendants deny that they employed Plaintiff Thomas Denney, jointly or otherwise.  Moreover, Defendants deny the allegations in Paragraph 7 to the extent they are inconsistent with Plaintiff Thomas Denney's notice of consent attached to the Complaint, which speaks for itself.  Defendants lack sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 7 of the Complaint and therefore deny same.

8. Defendants deny the allegations contained in Paragraph 8 of the Complaint.

9. Defendants deny the allegations of Paragraph 9 as stated. Defendant Time Warner Cable Inc. denies that it is a proper party to this action, as it did not contract with Reno Services for whom Plaintiffs worked. Defendants deny that they divided their workforce into "apparent" employees and "contract" employees and deny that they characterized any employees as independent contractors. Defendants admit that they pay overtime to their employees as required by law. The remaining allegations contained in Paragraph 9 contain legal conclusions to which no response is required by Defendants. Defendants deny the remaining allegations contained in Paragraph 9 of the Complaint.

10. Defendant Time Warner Cable Inc. denies that it is a proper party to this action, as it did not contract with Reno Services for whom Plaintiffs worked. Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint, if any.

## DEFENDANTS' ALLEGED COMMON BUSINESS PRACTICES

11. Defendants deny the allegations contained in Paragraph 11 of the Complaint.

4

12.    Defendants admit that the installation of cable, internet and telephone services is important to their business.  Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint.

13.    Defendants deny that they divided their workforce into "apparent" employees and "contract" employees and deny that they characterized any employees as independent contractors.  Defendants deny that they paid Plaintiffs or that they were responsible for paying Plaintiffs.  Defendants deny the remaining allegations contained in Paragraph 13 of the Complaint.

14.    Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15.    Defendants deny that they divided their workforce into "apparent" employees and "contract" employees and deny that they characterized any employees as independent contractors.  Defendants deny the remaining allegations contained in Paragraph 15 of the Complaint.

16.    Defendants deny that Plaintiffs were ever "contract" employees of Defendants.  Defendants admit that at various times Defendant Time Warner Cable LLC ("TWC") entered into contracts with third parties, including Reno Services, to provide various services, including the installation of cable services. Defendants lack knowledge as to how or why Reno Services hired Plaintiffs, and

therefore deny Plaintiffs' allegations in that regard. Defendants deny the remaining allegations contained in Paragraph 16 of the Complaint.

17.     Defendants admit that TWC assigned installation work orders to Reno Services and that Reno Services assigned these work orders, in its sole discretion, to particular Reno Services' employees, including Plaintiffs. On occasion, Plaintiffs divided the work orders that TWC assigned to Reno Services amongst themselves. Defendants further admit that jobs listed on the work orders were expected to be completed and the work orders were expected to be annotated with the correct job codes. Defendants admit that Plaintiffs provided completed work orders to Reno Services and TWC. Defendants admit that TWC paid Reno Services for the installation services it performed for TWC. Defendants deny the remaining allegations contained in Paragraph 17 of the Complaint.

18.     Defendants admit that they did not provide trucks or vans to Reno Services or Reno Services' employees. Defendants further admit that Reno Services provided trucks or vans to Plaintiffs. Defendants admit that Reno Services assigned its employees, including Plaintiffs, to particular geographic locations at its sole discretion. Defendants deny that they assigned Plaintiffs to particular offices or locations. Defendants lack sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 18 of the Complaint and therefore deny same.

19.     Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 20 of the Complaint and therefore deny same.

21.     Defendants deny the allegations contained in Paragraph 21 of the Complaint.

22.     Defendants admit that TWC assigned specific installer numbers to individuals who performed installation work. Defendants deny the remaining allegations contained in Paragraph 22 of the Complaint.

23.     Defendants admit that an installer number is listed on each work order. Defendants lack sufficient knowledge to admit or deny the allegations regarding Reno Services contained in Paragraph 23 of the Complaint and therefore deny same. Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24.     Defendants admit that most work orders were assigned one of four timeframes. Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25.     Defendants lack sufficient knowledge to admit or deny the allegations regarding Reno Services contained in Paragraph 25 of the Complaint

and therefore deny same. Defendants deny the remaining allegations contained in Paragraph 25 of the Complaint.

26. Defendants deny the allegations contained in Paragraph 26 of the Complaint, as stated.

27. Defendants admit that Reno Services often provided its employees with a truck or van, all tools needed to perform job tasks, and cell phones. Defendants deny the remaining allegations contained in Paragraph 27 of the Complaint.

28. Defendants admit that TWC controlled the keys to its lock boxes. Defendants admit that, at one time, TWC provided contractor companies with cable wire and certain other stock necessary to complete certain installation work. Defendants deny the remaining allegations contained in Paragraph 28 of the Complaint.

29. Defendants admit that they were not responsible for, and did not pay for, fueling Plaintiffs' trucks or vans. Defendants lack sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 29 of the Complaint and therefore deny same.

30. Defendants admit that they were not responsible for, and did not pay for, maintenance or repair of Plaintiffs' trucks or vans. Defendants lack sufficient

knowledge to admit or deny the remaining allegations contained in Paragraph 30 of the Complaint and therefore deny same.

31.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 31 of the Complaint and therefore deny same.

32.     Defendants deny the allegations contained in Paragraph 32 of the Complaint.

33.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 33 of the Complaint and therefore deny same.

34.     Defendants deny the allegations contained in Paragraph 34 of the Complaint.

35.     Defendants admit that jobs listed on TWC's work orders were expected to be completed and the work orders were expected to be annotated with the correct job codes. Defendants deny the remaining allegations contained in Paragraph 35 of the Complaint.

36.     Defendants admit that for a portion of the relevant time period, cable installation technicians or Reno Services needed to contact TWC to have service activated. Defendants also admit that cable installation technicians sometimes accepted payment from customers for the amount stated on the work order. Defendants lack sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 36 of the Complaint and therefore deny same.

9

37.     Defendants deny the allegations contained in Paragraph 37 of the Complaint.

38.     Defendants admit that Reno Services did not employee anyone with the job title of "dispatcher." Defendants deny the remaining allegations contained in Paragraph 38 of the Complaint.

39.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 39 of the Complaint and therefore deny same.

40.     Defendants admit that cable installation technicians would attempt to contact customers by telephone. Defendants admit that, on occasion, when cable installation technicians could not contact customers, they have called TWC's dispatcher, who would then attempt to contact the customers. Defendants deny the remaining allegations contained in Paragraph 40 of the Complaint.

41.     Defendants deny the allegations contained in Paragraph 41 of the Complaint.

42.     Defendants deny the allegations contained in Paragraph 42 of the Complaint.

43.     Defendants deny that they paid Plaintiffs or that they were responsible for paying Plaintiffs. Defendants deny the remaining allegations contained in Paragraph 43 of the Complaint, if any.

44.     Defendants deny that they paid Plaintiffs or that they were responsible for paying Plaintiffs.  Defendants deny the remaining allegations contained in Paragraph 44 of the Complaint, if any.

45.     Defendants deny the allegations contained in Paragraph 45 of the Complaint.

46.     Defendants admit that Reno Services' employees provided completed work orders to Reno Services and TWC.  Defendants deny the remaining allegations contained in Paragraph 46 of the Complaint.

47.     Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48.     Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 49 of the Complaint and therefore deny same.

50.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 50 of the Complaint and therefore deny same.

51.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 51 of the Complaint and therefore deny same.

52.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 52 of the Complaint and therefore deny same.

53.    Defendants admit that Plaintiffs wore clothing reflecting the name of Reno Services; used trucks with the name of Reno Services, along with a magnetic sign indicating that Reno Services was a contractor for TWC; and had an identity card with an installer number issued by TWC and a photograph, stating that they were an employee of Reno Services which contracted with TWC. Defendants deny the remaining allegations contained in Paragraph 53 of the Complaint.

54.    Defendants admit that on one occasion TWC distributed TWC hats to some contractors.  Defendants deny the remaining allegations contained in Paragraph 54 of the Complaint.

55.    Defendants admit that shortly after TWC distributed the hats, TWC instructed the contractors who had received them that the hats should not be worn by their workers.  Defendants deny the remaining allegations contained in Paragraph 55 of the Complaint.

56.    Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 56 of the Complaint and therefore deny same.

57.    Defendants admit that Plaintiffs wore identification badges that specifically stated that they were employees of Reno Services and that Reno Services was a contractor of TWC.  Defendants deny the remaining allegations contained in Paragraph 57 of the Complaint, if any.

58. Defendants admit that TWC performed occasional quality control inspections on work performed by cable installation technicians working for Reno Services. Defendants deny the remaining allegations contained in Paragraph 58 of the Complaint.

59. Defendants admit that Plaintiffs did not receive formal training from TWC. Defendants further admit that TWC provided feedback to Reno Services regarding the quality control inspections TWC conducted on work performed by employees of Reno Services. Defendants deny the remaining allegations contained in Paragraph 59 of the Complaint.

60. Defendants admit that contractors were provided with installation standards with which they were expected to comply. Defendants deny the remaining allegations contained in Paragraph 60 of the Complaint.

61. Defendants deny the allegations contained in Paragraph 61 of the Complaint.

62. Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 62 of the Complaint, as stated, and therefore deny same.

63. Defendants deny the allegations contained in Paragraph 63 of the Complaint.

64.     Defendants deny the allegations contained in Paragraph 64 of the Complaint.

65.     Defendants deny the allegations contained in Paragraph 65 of the Complaint.

66.     Defendants deny that TWC ever "charged back" Plaintiffs. Defendants lack sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 66 of the Complaint and therefore deny same.

67.     Defendants admit that they did not pay Plaintiffs and that they were not responsible for paying Plaintiffs. Defendants deny the remaining allegations contained in Paragraph 67 of the Complaint.

68.     Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69.     Defendants admit that, if a customer inquired of TWC as to an installer's time of arrival, TWC would contact either Reno Services or installer for an estimated time of arrival. Defendants deny the remaining allegations contained in Paragraph 69 of the Complaint.

70.     Defendants deny the allegations contained in Paragraph 70 of the Complaint.

71.     Defendants admit that TWC paid its employees overtime as required by law. Defendants further admit that they did not pay Plaintiffs and that they

were not responsible for paying Plaintiffs. Defendants deny the remaining allegations contained in Paragraph 71 of the Complaint, if any.

72.    Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.    Defendants deny the allegations contained in Paragraph 73 of the Complaint.

74.    Defendants deny the allegations contained in Paragraph 74 of the Complaint.

75.    Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76.    Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.    Defendants deny the allegations contained in Paragraph 77 of the Complaint.

78.    Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 78 of the Complaint and therefore deny same.

79.    Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80.     Defendants admit that they did not pay Plaintiffs and that they were not responsible for paying Plaintiffs. Defendants deny the remaining allegations contained in Paragraph 80 of the Complaint, if any.

81.     Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.     Defendants deny that they paid Plaintiffs or that they were responsible for paying Plaintiffs. Defendants deny the remaining allegations contained in Paragraph 83 of the Complaint.

84.     Defendants deny the allegations contained in Paragraph 84 of the Complaint.

## COLLECTIVE ACTION AND CLASS ALLEGATIONS

85.     The allegations in Paragraph 85 contain legal conclusions to which no response is required by Defendants. To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that this matter is appropriate for class action treatment.

86.     The allegations in Paragraph 86 contain legal conclusions to which no response is required by Defendants. To the extent this Paragraph contains any

allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that this matter is appropriate for class action treatment.

87.     The allegations in Paragraph 87 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that this matter is appropriate for class action treatment.

88.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph 88 of the Complaint and therefore deny same. Defendants specifically deny that this matter is appropriate for class action treatment.

89.     Defendants deny the allegations contained in Paragraph 89 of the Complaint.  Defendants specifically deny that this matter is appropriate for class action treatment.

90.     Defendants deny the allegations contained in Paragraph 90 of the Complaint.  Defendants specifically deny that this matter is appropriate for class action treatment.

## COUNT I

## ("Alleging Overtime Violations of the FLSA")

91.     Defendants hereby incorporate their responses to Paragraphs 1 through 90 above as if fully set forth herein.

92.     The allegations in Paragraph 92 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that they have violated the FLSA.

93.     The allegations in Paragraph 93 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that they have violated the FLSA.

94.     Defendants deny the allegations contained in Paragraph 94 of the Complaint.

95.     Defendants deny the allegations contained in Paragraph 95 of the Complaint.

96.     The allegations in Paragraph 96 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that they have violated the FLSA.

97.     The allegations in Paragraph 97 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that they have violated the FLSA.

98.     Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.     Defendants deny the allegations contained in Paragraph 99 of the Complaint.

## COUNT II

### ("Alleging Overtime Violations of the Ohio Wage Act")

100.    Defendants hereby incorporate their responses to Paragraphs 1 through 99 above as if fully set forth herein.

101.    The allegations in Paragraph 101 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that they have violated the Ohio Wage Act.

102.    The allegations in Paragraph 102 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that they have violated the Ohio Wage Act.

103.    Defendants deny the allegations contained in Paragraph 103 of the Complaint.

104.    Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105.    The allegations in Paragraph 105 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that they have violated the Ohio Wage Act.

106.    The allegations in Paragraph 106 contain legal conclusions to which no response is required by Defendants.  To the extent this Paragraph contains any allegations requiring a response from Defendants, those allegations are denied. Defendants specifically deny that they have violated the Ohio Wage Act.

107.    Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.    Defendants deny the allegations contained in Paragraph 108 of the Complaint.

Defendants deny all allegations of the Complaint not specifically admitted herein.

## PRAYER FOR RELIEF

Defendants deny any and all allegations set forth in the section of the Complaint entitled "Prayer for Relief" and deny all allegations in subparagraphs A through F. Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever against Defendants and deny that an appropriate class should or could be certified in this action.

## REQUEST FOR JURY TRIAL

Defendants acknowledge that Plaintiffs have requested a jury trial.

## AFFIRMATIVE DEFENSES

Defendants hereby assert the following affirmative defenses to the claims alleged in the Complaint:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation, including, but not limited to, the two-year limitations period set forth in Section 6 of the Portal-to-Portal Act, 29 U.S.C. § 255.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs have failed to join necessary and/or indispensable parties.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because any acts or omissions giving rise to this action were done in good faith and with reasonable grounds for believing that the acts or omissions were not a violation of the FLSA or the OMWA.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs have failed, refused, and/or neglected to mitigate the damages complained of in the Complaint, if any.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Time Warner Cable Inc. are barred because it is not the real party in interest.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by exemptions, exclusions, exceptions or credits set forth in the Fair Labor Standards Act ("FLSA").

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to equitable or injunctive relief insofar as they have adequate remedies at law.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Defendants were at no time Plaintiffs' employer or joint employer.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' class allegations are barred as a matter of law because Plaintiffs cannot satisfy the prerequisites for class certification as required by Federal Rule of Civil Procedure 23.

### ELEVENTH AFFIRMATIVE DEFENSE

The allegations set forth by the named Plaintiffs on behalf of themselves and the alleged class, the existence of which is expressly denied, involve matters for which individual questions predominate and therefore, are not appropriate claims for class treatment pursuant to Federal Rule of Civil Procedure 23.

### TWELFTH AFFIRMATIVE DEFENSE

The adjudication of the claims of the putative class through generalized classwide proof would violate Defendants' rights to due process and trial by jury guaranteed by the United States and Ohio Constitutions.

### THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek statutory or other penalties, such claim must comport with the due process requirements of *State Farm v. Campbell,* 538 U.S. 408 (2003).

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' class claims fail to include the factual allegations necessary to state a claim pursuant to *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, from recovery of any damages by the doctrine of laches.

## SIXTEENTH AFFIRMATIVE DEFENSE

The class allegations set forth in the Complaint are barred as a matter of law because the named Plaintiffs lack standing to sue on behalf of themselves, the putative class and/or the general public and, thus, cannot represent the interests of the putative class member as to each purported cause of action therein.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The class of persons that the named Plaintiffs purport to represent, the existence of which is expressly denied, is not so numerous that joinder is impracticable and, therefore, fails to meet the prerequisites for class certification as required by Federal Rule of Civil Procedure 23 and other applicable current legal standards.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The claims alleged by the named Plaintiffs are neither common to nor typical of those, if any, of the alleged class, which Plaintiffs purport to represent, the existence of which is expressly denied.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in part by the provisions of Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, because any acts or omissions giving rise to this action were done in good faith and with reasonable grounds for believing that the acts or omissions were not a violation of the Fair Labor Standards Act of 1938, as amended.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the provisions of Section 4 of the Portal-to-Portal Act, 29 U.S.C. § 254, as to all hours during which Plaintiffs were engaged (i) in walking, riding, or traveling to and from the actual place(s) they performed the principal activities they performed, or (ii) in activities which were preliminary or postliminary to their principal activities.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of de minimis non curet lex.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims for Federal Rule of Civil Procedure 23 class treatment of their OMWA claims are barred because they are incompatible with the FLSA and violate the Rules Enabling Act.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are subject to setoff and recoupment.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred by fraud.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred by the doctrine of unclean hands.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendants reserve the right to assert any additional defenses that may arise as discovery progresses or otherwise in the course of litigation.

WHEREFORE, having fully answered and asserted their affirmative defenses, Defendants pray that Plaintiffs' Complaint be fully and finally dismissed with prejudice, at Plaintiffs' cost, and that the Court grant Defendants such other and further relief as is just and equitable.

## COUNTERCLAIM

NOW COMES Defendant and Counterclaim Plaintiff, Time Warner Cable LLC ("TWC") and asserts the following Counterclaim against Plaintiffs as follows:

## JURISDICTION AND PARTIES

1.

Counterclaim Plaintiff TWC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.

2.

Counterclaim Defendant Michael Keeton is an individual domiciled in the State of Ohio living within this judicial district.

3.

Counterclaim Defendant Eden Taylor is an individual domiciled in the State of Ohio living within this judicial district.

4.

Counterclaim Defendant Shawn Taylor is an individual domiciled in the State of Ohio living within this judicial district.

5.

Counterclaim Defendant Thomas Denney is an individual domiciled in the State of Ohio living within this judicial district.

6.

This Court has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367(a).

## **BACKGROUND FACTS**

7.

TWC is in the business of providing cable television, internet and digital phone services.

8.

From time-to-time, TWC contracts with third parties to perform certain cable television, internet and digital telephone installation services.

TWC's Relationship with Reno Services, LLC and Counterclaim Defendants

9.

In 2006, TWC entered into a contract with Reno Services, LLC ("Reno Services") whereby Reno Services agreed to perform certain installation services on behalf of TWC. Reno Services performed cable television, internet and digital telephone installations for TWC between 2006 and 2008.

10.

At all relevant times hereto, Counterclaim Defendants Michael Keeton, Eden Taylor, Shawn Taylor and Thomas Denney (collectively referred to herein as "Counterclaim Defendants") were employees of Reno Services.

11.

As part of the relationship between TWC and Reno Services, TWC would issue work orders to Reno Services for specific installation services to be performed at customer residences.  The work orders contained certain codes that represented specific tasks to be performed during the installation process.

12.

After receiving work orders from TWC, Reno Services would either assign the work orders, in its sole discretion, to specific employees of Reno Services, including Counterclaim Defendants, or Reno Services' employees, including Counterclaim Defendants, would divide the works orders amongst themselves for execution.

13.

During installations, TWC's customers sometimes requested additional services (e.g., additional outlets, cable boxes, etc.) that were not provided for in the work orders issued by TWC.  Moreover, some installations required work that was not specifically provided for in the work orders issued by TWC.

14.

When Counterclaim Defendants performed installation services at the homes

of TWC's customers, Counterclaim Defendants would indicate on the work orders

that were assigned to them any additional or extra services that they performed at the

customer site that were not specifically provided for in the TWC work orders.

Specifically, Counterclaim Defendants would provide the specific codes associated

with any such additional or extra work on the TWC work orders.

15.

Counterclaim Defendants provided completed work orders, including work

orders that included codes for additional or extra work purportedly performed by

Counterclaim Defendants, to Reno Services and TWC.

16.

Reno Services was compensated for its work on a per task basis by TWC --

i.e., TWC paid Reno Services a set amount for each installation task performed by

Reno Services.

17.

For the vast majority of the time that Reno Services performed installation

services for TWC, Reno Services issued invoices to TWC that reflected the work

that had been performed by Reno Services during the applicable time period.  Reno

Services generated these invoices based on the completed work orders submitted

by its employees, including Counterclaim Defendants. TWC relied on these

invoices and the completed work orders submitted by Reno Services' employees,

including Counterclaim Defendants, in issuing payment to Reno Services. TWC's

reliance on the invoices provided by Reno Services and the completed work orders

submitted by Reno Services' employees, including Counterclaim Defendants, was

reasonable.

18.

Towards the end of the time period when Reno Services performed

installation services for TWC, TWC would generate invoices based on the

completed work orders it received from Reno Services' employees, including

Counterclaim Defendants, and submit those invoices to Reno Services for

verification that the work identified therein had, in fact, been performed. Once

TWC received confirmation from Reno Services that the invoices accurately

reflected the work performed, TWC would issue payment to Reno Services. TWC

relied on Reno Services' confirmation of these invoices and the completed work

orders submitted by Reno Services' employees, including Counterclaim

Defendants, in making payment to Reno Services during this time period. TWC's

reliance on Reno Services' confirmation of these invoices and the completed work

orders submitted by Reno Services' employees, including Counterclaim

Defendants, was reasonable.

19.

Reno Services had sole discretion to determine how its employees, including Counterclaim Defendants, would be compensated.

20.

Reno Services paid Counterclaim Defendants for installation services they performed on a per task basis -- i.e., Reno Services paid Counterclaim Defendants a specific amount for each installation task they performed.

21.

Based on the method by which Reno Services compensated its employees, Counterclaim Defendants had an incentive to identify additional or extra work on TWC's work orders.  Counterclaim Defendants knew they would be paid by Reno Services for such additional or extra work.

Counterclaim Defendants' Scheme to Defraud TWC

22.

From the outset of their employment with Reno Services, Counterclaim Defendants embarked on a wide-ranging scheme to defraud TWC.  Specifically, Counterclaim Defendants falsely and routinely claimed they had performed additional or extra work on TWC's work orders when, in fact, they had not performed such work.  Moreover, Counterclaim Defendants falsely and routinely "double coded" work on TWC's work orders, thereby claiming that they had

32

performed such work twice, when they had only performed it once.  Specific
examples of the fraud perpetrated by Counterclaim Defendants are set forth below.

23.

Plaintiff Tom Denney falsely and intentionally claimed on work order number
302238443 that he reconnected three existing cable outlets and installed one new
outlet when the customer had only two cable outlets.  A true and correct copy of
work order number 302238443 is attached hereto as Exhibit "1" and incorporated
herein by reference.[2]

24.

Plaintiff Shawn Taylor falsely and intentionally claimed on work order
number 302251981 that he reconnected four existing cable outlets and installed one
new cable outlet when the customer had only four cable outlets.  A true and correct
copy of work order number 302251981 is attached hereto as Exhibit "2" and
incorporated herein by reference.

25.

Plaintiff Shawn Taylor falsely and intentionally claimed on work order
number 302272173 that he reconnected five existing cable outlets and installed one
new cable outlet when the customer had only one cable outlet.  A true and correct

---

[2]  TWC has redacted certain personally identifiable information regarding its customers
contained in the work orders attached hereto.

copy of work order number 302272173 is attached hereto as Exhibit "3" and incorporated herein by reference.

26.

Plaintiff Eden Taylor falsely and intentionally claimed on work order number 302903419 that he reconnected three existing cable outlets and installed two new cable outlets when the customer had only four cable outlets. A true and correct copy of work order number 302903419 is attached hereto as Exhibit "4" and incorporated herein by reference.

27.

Plaintiff Shawn Taylor falsely and intentionally claimed on work order number 308117671 that he reconnected four cable outlets when the customer had only one cable outlet. A true and correct copy of work order number 308117671 is attached hereto as Exhibit "5" and incorporated herein by reference.

28.

Plaintiff Shawn Taylor falsely and intentionally claimed on work order number 308080497 for reworking four telephone lines when the customer had only three telephone lines. A true and correct copy of work order number 308080497 is attached hereto as Exhibit "6" and incorporated herein by reference.

34

29.

Plaintiff Michael Keeton falsely and intentionally claimed on work order number 309859882 that he reconnected six existing cable outlets and installed one new cable outlet when the customer had only two cable outlets. A true and correct copy of work order number 309859882 is attached hereto as Exhibit "7" and incorporated herein by reference.

30.

Plaintiff Tom Denney falsely and intentionally claimed that he educated the customer regarding work performed on work order number 302512256 when the customer was not at home. A true and correct copy of work order number 302512256 is attached hereto as Exhibit "8" and incorporated herein by reference.

31.

Plaintiff Eden Taylor falsely and intentionally claimed that he ran a new cable drop and reconnected a new cable drop on work order number 302869914 when he did not complete both of those tasks. A true and correct copy of work order number 302869914 is attached hereto as Exhibit "9" and incorporated herein by reference.

32.

Plaintiff Tom Denney falsely and intentionally clamed that he reworked nine existing digital telephone outlets on work order number 302702729 when that work was already included in the full digital telephone installation performed at this

location. A true and correct copy of work order number 302702729 is attached hereto as Exhibit "10" and incorporated herein by reference.

33.

Plaintiff Tom Denney falsely and intentionally clamed that he reworked three existing digital telephone outlets on work order number 308514074 when that work was already included in the full digital telephone installation performed at this location. A true and correct copy of work order number 308514074 is attached hereto as Exhibit "11" and incorporated herein by reference.

34.

Plaintiff Tom Denney falsely and intentionally claimed that he performed a standard high-speed internet installation on work order number 308542078 when he did not perform such an installation. A true and correct copy of work order number 308542078 is attached hereto as Exhibit "12" and incorporated herein by reference.

35.

Plaintiff Michael Keeton falsely and intentionally clamed that he reworked six existing digital telephone outlets on work order number 308488679 when that work was already included in the full digital telephone installation performed at this location. A true and correct copy of work order number 308488679 is attached hereto as Exhibit "13" and incorporated herein by reference.

36.

Plaintiff Michael Keeton falsely and intentionally claimed two truck trips on work order number 308578354.  A true and correct copy of work order number 308578354 is attached hereto as Exhibit "14" and incorporated herein by reference.

37.

Plaintiff Michael Keeton falsely and intentionally claimed two truck trips on work order number 308582024.  A true and correct copy of work order number 308582024 is attached hereto as Exhibit "15" and incorporated herein by reference.

38.

Plaintiff Michael Keeton falsely and intentionally clamed that he reworked one existing digital telephone outlet on work order number 308555799 when that work was already included in the full digital telephone installation performed at this location.  A true and correct copy of work order number 308555799 is attached hereto as Exhibit "16" and incorporated herein by reference.

39.

Plaintiff Michael Keeton falsely and intentionally claimed two truck trips on work order number 308570487.  A true and correct copy of work order number 308570487 is attached hereto as Exhibit "17" and incorporated herein by reference.

40.

Plaintiff Michael Keeton falsely and intentionally clamed that he reworked eleven existing telephone outlets on work order number 308481931 when that work was already included in the full digital telephone installation performed at this location. A true and correct copy of work order number 308481931 is attached hereto as Exhibit "18" and incorporated herein by reference.

41.

Plaintiff Michael Keeton falsely and intentionally clamed that he reworked three existing telephone outlets on work order number 308579603 when that work was already included in the full digital telephone installation performed at this location. Mr. Keeton also falsely and intentionally claimed two truck trips. A true and correct copy of work order number 308579603 is attached hereto as Exhibit "19" and incorporated herein by reference.

42.

Plaintiff Tom Denney falsely and intentionally clamed that he reworked one existing telephone outlet on work order number 308689725 when that work was already included in the full digital telephone installation performed at this location. A true and correct copy of work order number 308689725 is attached hereto as Exhibit "20" and incorporated herein by reference.

43.

Plaintiff Shawn Taylor falsely and intentionally clamed that he reworked four existing telephone outlets on work order number 308678898 when the work was already included in the full digital telephone installation performed at this location. Mr. Taylor also falsely and intentionally claimed that he performed a high-speed internet installation at this location when no such installation was performed. A true and correct copy of work order number 308678898 is attached hereto as Exhibit "21" and incorporated herein by reference.

44.

Plaintiff Shawn Taylor falsely and intentionally clamed that he reworked two existing telephone outlets on work order number 308772721 when that work was already included in the full digital telephone installation performed at this location. Mr. Taylor also falsely and intentionally claimed two truck trips. A true and correct copy of work order number 308772721 is attached hereto as Exhibit "22" and incorporated herein by reference.

45.

Plaintiff Michael Keeton falsely and intentionally claimed two truck trips on work order number 308689814. A true and correct copy of work order number 308689814 is attached hereto as Exhibit "23" and incorporated herein by reference.

46.

Plaintiff Michael Keeton falsely and intentionally clamed that he reworked two existing telephone outlets on work order number 308689966 when that work was already included in the full digital telephone installation performed at this location.  Mr. Keeton also falsely and intentionally claimed that he performed a high-speed internet installation at this location when no such installation was performed.  A true and correct copy of work order number 308689966 is attached hereto as Exhibit "24" and incorporated herein by reference.

47.

Plaintiff Michael Keeton falsely and intentionally clamed that he reworked four existing telephone outlets on work order number 308773872 when that work was already included in the full digital telephone installation performed at this location.  A true and correct copy of work order number 308773872 is attached hereto as Exhibit "25" and incorporated herein by reference.

48.

Plaintiff Michael Keeton falsely and intentionally clamed that he reworked eleven existing telephone outlets on work order number 308749276 when that work was already included in the full digital telephone installation performed at this location.  A true and correct copy of work order number 308749276 is attached hereto as Exhibit "26" and incorporated herein by reference.

49.

Counterclaim Defendants conspired with each other to perpetrate this fraud against TWC.  For example, Counterclaim Defendants frequently met to falsely identify additional and extra work on TWC's work orders for the purpose of reaching the target numbers they set for themselves for payment from Reno Services during a particular pay period.  Moreover, Counterclaim Defendants frequently joked amongst themselves regarding the false statements they submitted to Reno Services and TWC regarding such extra and additional work.

50.

TWC has suffered substantial damages as a result of Counterclaim Defendants' fraudulent scheme.  TWC seeks recovery of these damages, plus punitive damages, prejudgment interest and attorneys' fees, as detailed below.

## COUNT I

## FRAUD

51.

TWC hereby incorporates Paragraph 1 through 50 of its Counterclaim above as if fully set forth herein.

52.

Counterclaim Defendants falsely and routinely identified additional or extra work on TWC's work orders that they never actually performed.  Counterclaim

Defendants falsely represented to TWC and Reno Services that they performed this work, when in fact, they did not.  Counterclaim Defendants made these false representations to TWC and Reno Services for the purpose of and with the intent of deceiving TWC.  Counterclaim Defendants knew these representations were false at the time they were made.

53.

Counterclaim Defendants falsely and routinely "double coded" work on TWC's work orders.  Counterclaim Defendants falsely represented to TWC and Reno Services that they performed such "double coded" work twice, when they had only performed it once.  Counterclaim Defendants made these false representations to TWC and Reno Services for the purpose of and with the intent of deceiving TWC. Counterclaim Defendants knew these representations were false at the time they were made.

54.

Counterclaim Defendants made such misrepresentations to TWC and Reno Services because Counterclaim Defendants knew that Reno Services would pay Counterclaim Defendants for each item of additional or extra work they recorded.

55.

During the time period that Reno Services issued invoices to TWC, Counterclaim Defendants knew that the additional and extra work they identified on

42

TWC's work orders would be included in the invoices that Reno Services issued to

TWC.  Moreover, Counterclaim Defendants knew that TWC would rely on the

additional and extra work Counterclaim Defendants identified on TWC's work

orders in paying Reno Services' invoices.  The additional and extra work

Counterclaim Defendants identified on TWC's work orders were material to TWC's

decision to pay Reno Services' invoices.  Counterclaim Defendants intended for

TWC to rely on the additional and extra work Counterclaim Defendants identified

on TWC's work orders in paying Reno Services' invoices.  TWC did, in fact, rely on

the additional and extra work Counterclaim Defendants identified on TWC's work

orders in paying Reno Services' invoices.  TWC's reliance on the additional and

extra work Counterclaim Defendants identified on TWC's work orders was

reasonable.

56.

During the time period when TWC issued invoices to Reno Services for

confirmation of the installation services Reno Services performed, Counterclaim

Defendants knew that the additional and extra work they identified on TWC's work

orders would be included in the invoices that TWC issued to Reno Services for

confirmation.  Moreover, Counterclaim Defendants knew that TWC would rely on

the additional and extra work Counterclaim Defendants identified on TWC's work

orders in paying Reno Services for these invoices.  The additional and extra work

Counterclaim Defendants identified on TWC's work orders were material to TWC's decision to pay Reno Services for these invoices. Counterclaim Defendants intended for TWC to rely on the additional and extra work Counterclaim Defendants identified on TWC's work orders in paying Reno Services for these invoices. TWC did, in fact, rely on the additional and extra work Counterclaim Defendants identified on TWC's work orders in paying Reno Services for these invoices. TWC's reliance on the additional and extra work Counterclaim Defendants identified on TWC's work orders was reasonable.

57.

As a direct and proximate result of the fraud perpetrated by Counterclaim Defendants, TWC has suffered damages in an amount to be proven at trial.

58.

In all the aforementioned conduct, Counterclaim Defendants acted with malice and ill will towards TWC, thereby entitling TWC to punitive damages and attorneys' fees.

WHEREFORE, TWC prays that the Court:

(a)     enter judgment in favor of TWC on its Counterclaim;

(b)     award TWC compensatory damages in an amount to be determined at trial;

(c)     award TWC punitive damages in an amount to be determined at trial;

(d)     award TWC all costs in pursuing this action including, but not limited

to, attorneys' fees; and

(e)     grant such other and further relief to TWC as the Court deems just and

equitable.

DATED:  April 13, 2011.          /s/ Michael S. French
                                 Michael S. French
                                 Pro Hac Vice
                                 E-mail:  mfrench@wargofrench.com
                                 Michael D. Kabat
                                 Pro Hac Vice
                                 E-mail: mkabat@wargofrench.com
                                 Joseph W. Ozmer II
                                 Pro Hac Vice
                                 E-mail: jozmer@wargofrench.com
                                 Sarah T. Thompson
                                 Pro Hac Vice
                                 E-mail: sthompson@wargofrench.com

                                 Wargo & French LLP
                                 1170 Peachtree Street, NE
                                 Suite 2020
                                 Atlanta, GA  30309
                                 Telephone:  (404) 853-1500
                                 Facsimile:  (404) 853-1501

Lawrence D. Walker, Trial Attorney
Ohio Bar No. 0012036
Taft Stettinius & Hollister LLP
21 East State Street, Suite 1200
Columbus, OH 43215-4221
Telephone: (614) 221-2838
Facsimile: (614) 221-2007
E-mail: *walker@taftlaw.com*

*Attorneys for Defendants*
*Time Warner Cable Inc. and*
*Time Warner Cable LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2010, I served a copy of **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAM OF DEFENDANTS TIME WARNER CABLE INC. AND TIME WARNER CABLE LLC TO PLAINTIFFS' SECOND AMENDED COLLECTIVE ACTION AND CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

John S. Marshall
Edward R. Forman
Marshall and Morrow LLC
111 West Rich Street, Suite 430
Columbus, Ohio 43215-5296
jmarshall@marshallandmorrow.net
eforman@marshallandmorrow.net

Robert DeRose
Robert K. Handelman
Barkan, Neff, Handelman, Meizlish
360 South Grant Avenue
PO Box 1989
Columbus, Ohio 43216-1989
bderose@barkanneff.com
bobhandelman@ameritech.net

Louis A. Jacobs
66871 Rayo Del Sol
Desert Hot Springs, CA 92240-1871
LAJOhio@aol.com

*/s/ Michael S. French*
Michael S. French

654127v2