IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL KEETON, On Behalf Of Himself and All Others Similarly Situated,** *et al.*, | : : : Case No.: 2:09-CV-1085 |
| **Plaintiff**, | : |
| vs. | : **JUDGE ALGENON L. MARBLEY** : **Magistrate Judge Deavers** |
| **TIME WARNER CABLE, INC.,** *et al.* | : |
| **Defendants**. | : |

**OPINION & ORDER**

**I. Introduction**

This matter is currently before the Court on Defendants Time Warner Inc. and Time Warner Cable LLC 's (collectively, "Time Warner") Motion for Summary Judgment. (Doc. 69). The Plaintiffs filed a complaint for unpaid overtime pay against the Defendants under 29 USC §201, *et seq*. the Fair Labor Standards Act ("FLSA"), and ORC §4111.01, *et seq.* the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act"). For the reasons discussed below, the Defendants' Motion is **DENIED**.

**II. Background**

The four named Defendants to this action, Thomas Denney ("Denney"), Michael Keeton ("Keeton"), Eden Taylor, and Shawn Taylor, were all formerly employed by Reno Services, LLC ("Reno Services"). Reno Services originally began a contracted relationship with Time Warner to perform lawn services, but later began to perform cable installation services for Time Warner in or around 2005 or 2006. Time Warner owns, manages, and installs cable systems that

provide customers with video, high-speed data, and residential telephone services.  Time Warner's installation workforce is divided into two types of employees: (1) those directly employed by Time Warner; and (2) contract installers. Time Warner regularly works with independent companies to provide the contract installers. Reno Services was one such independent company. Reno Services stopped performing installation services for Time Warner in or around 2008, though the company currently still performs lawn and cable burying services for the cable company.

In their Second Amended Complaint filed on March 14, 2011, the Plaintiffs allege that Time Warner jointly employed them along with Reno Services during their respective employment periods, and, therefore, should have paid them overtime wages for hours worked beyond their regular workday pursuant to FLSA and the Ohio Wage Act. On December 21, 2010, the Defendants filed a Motion for Summary Judgment in which they argue that no issue of material of fact exists as to whether Time Warner did not jointly employ the Plaintiffs, and, therefore, they are not required to provide the Plaintiffs with overtime pay. The Plaintiffs filed a Response to the summary judgment motion on February 18, 2011. The Defendants filed a Reply on March 22, 2011. This matter is currently before the Court.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).  But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light

most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## IV. LAW & ANALYSIS

In its Motion for Summary Judgment, Defendant Time Warner asserts that it is entitled to summary judgment because the facts clearly establish that: (1) Time Warner never employed any of the named Plaintiffs in this action; (2) the only connection that has ever existed between Time Warner and the Plaintiffs is that Time Warner contracted directly with Reno Services, a completely independent company that employed Plaintiffs; and (3) the evidence conclusively establishes that the "economic realties" are that Time Warner was never Plaintiffs' "joint

employer." For these reasons, the Defendants argue they are not liable for the Plaintiffs' alleged overtime wages.

In their Second Amended Complaint, the Plaintiffs assert that though they were hired by Reno Services, which they concede is an independent company, Reno Services and Time Warner's operations were intertwined to such a degree that both companies should be liable as "joint employers" for any unpaid overtime wages. Additionally, the Plaintiffs suggest that the "economic realities" of their relationship with Time Warner suggest that they were employees instead of independent contract installers. Thus, this Court must decide if a genuine issue of material fact exists as to whether: (1) Reno Services and Time Warner jointly employed the Plaintiffs; or (2) the "economic realities" indicate Plaintiffs were employees of Time Warner rather than independent contractors. Under either theory, Time Warner would be liable to pay Plaintiffs' overtime wages pursuant to FLSA and the Ohio Wage Law.

The FLSA provides in relevant part as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The Ohio Wage Law contains an analogous provision. *See* Ohio Rev. Code § 4111.03(A). The FLSA statute defines employment relations broadly. *Imars v. Contractors Manufacturing Services, Inc. & Vestfall*, 165 F.3d 27, 1998 U.S. App. LEXIS 21073 (6th Cir. 1998). "[E]mployee" is "any individual employed by an employer, " and "employ" is defined as "to suffer or permit to work." 29 U.S.C. §203(e)(1); 29 U.S.C. §203(g).

-4-

The Sixth Circuit has clarified this "employee" definition to mean that employees are those who, as an economic reality, are dependent upon the business to which they render service. *Imars*, 165 F.3d 27, 1998 U.S. App. LEXIS 21073, at *8 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984). The "economic realities" test is multi-factored and a loose formulation, resulting in a case-by-case resolution based on the totality of the circumstances. *Id.* Previously, this Circuit has used the following factors in considering whether a plaintiff is in fact an employee rather than an independent contractor, and thus covered under FLSA: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the work performed is an integral part of the alleged employer's business. *Donovan*, 736 F.2d at 1117. Thus, if a court determines that a plaintiff was an employee rather than an independent contractor as an economic reality, he would be entitled to overtime wages pursuant to FLSA.

Alternatively, under FLSA, "a worker may be jointly employed by two entities, each of which is responsible for complying with the [act]." *Skills Dev. Serv., Inc. v. Donovan*, 728 F.2d 294, 300 (6th Cir. 1984) (citing 29 C.F.R § 791.2(a)). The Sixth Circuit has acknowledged four factors in determining whether two companies are joint employers: the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership. *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Co., et al*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metro. Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)). All four criteria need not be

present. *Local No. 627, International Union of Operating Engineers v. N. L. R. B.*, 171 U.S. App. D.C. 102, 518 F.2d 1040, 1046 (D.C.Cir.1975), *aff'd in part*, *vacated in part* sub nom. *South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers*, 425 U.S. 800, 96 S. Ct. 1842, 48 L. Ed. 2d 382 (1976). This Circuit has further clarified that the issue of joint employment for FLSA purposes "depends upon all the facts in the particular case." 29 C.F.R § 791.2(a); *see also Int'l Longshoremen's Ass'n,* 927 F.2d at 902 (noting that determination of "joint employer [status] is essentially a factual issue"). Thus, if a court finds that a plaintiff was jointly employed by two entities, both entities are liable for any unpaid overtime wages.

Accordingly, either the *Donovan* "economic realities" test or the *Int'l Longshoremen* "joint employment" test could provide a grounds for determining that an entity is an employer under FLSA and responsible for paying overtime wages. The Court, therefore, will consider both tests in deciding if any genuine issue of material facts exist as to whether the Plaintiffs are entitled to overtime wages from Time Warner.

### A. "Economic Realities" Analysis

The Court will utilize the multi-factored "economic realities" analysis from *Donovan* to determine whether a genuine issue of material fact exists as to whether the Plaintiffs were employees of Time Warner rather than independent contractors. These factors are not exhaustive, but rather serve as a guide for the Court to make an overall determination regarding a Plaintiff's employment status. *Donovan*, 736 F.2d at 1116.

### i. Permanency of the relationship

A permanent working relationship supports a finding of employee status. *Id.* at 1117 (citing *Real v. Driscoll Strawberries Associates, Inc.*, 603 F.2d 748 (9th Cir. 1979). Defendants

argue that because they exercised no control over the length of the Plaintiffs' employment or the number of installations they performed, the relationship was not permanent. In *Donovan*, the Sixth Circuit looked at temporal factors to determine whether an employment relationship was in fact "permanent," supporting a finding of employment versus a contractor relationship. For example, the Court considered the number of days that migrant laborers were working for a particular farmer to make a conclusion regarding permanency. *Id*.

In this case, none of the Plaintiffs had a specified termination date when they would stop performing these installations. Further, all the Plaintiffs only performed Time Warner installations during their respective tenures at Reno Services because Reno Services was contractually required to perform installation services exclusively for Time Warner. (Doc. 81-28, p. 11). Even though the Defendants argue that this non-compete limitation extended only to Reno Services and not to its employees, in reality, the Plaintiffs had little time to pursue other sources of income as cable installers because the installation routes they received from Time Warner would often require a full workday to complete. The Plaintiffs allege they would start working by 8AM and not finish until after the final 4PM to 7PM installation window, including Saturdays. (Keeton, 183; S. Taylor, 101). Thus, even if the Plaintiffs were not legally restricted from working for other cable companies, their work schedules ensured they only completed Time Warner installations on any given day. Based on this testimony, a reasonable fact-finder could determine that Plaintiffs' employment was of a more permanent nature, and that this factor weighs in favor of finding an employment relationship with Time Warner existed.

### ii. Degree of skill

A determination regarding a worker's skill must be evaluated with reference to the task being performed pursuant to the contract. *Donovan*, 736 F.2d at 1118. The more skill and autonomy a worker possesses in completing the tasks laid out by the contract, the more this factor cuts in favor of finding that the worker was an independent contractor and that no employment relationship existed. For example, because the harvesters in *Donovan* had a "mastery" of the key skills specifically involved in picking fruit, the court found that this factor supported finding that the laborers were independent contractors rather than employees. *Id*.

In this case, the Defendants argue that the installation work Plaintiffs performed should be considered a skilled service, supporting their overall argument that Plaintiffs were not Time Warner employees. In their Response, the Plaintiffs admit that they received minimal job training from either Reno Services or Time Warner. Though they point to some training sessions they attended at Time Warner, they cite no evidence which suggests they depended on Time Warner to learn the skills necessary to perform cable installation services. Thus, a reasonable fact-finder would likely conclude that this factor weighs in favor of finding that Plaintiffs were independent contractors.

### iii. Investment in equipment or materials

This Circuit has previously found this factor to be indicative of an employment relationship when the worker performs a specialized task that requires an employer to make a significant capital investment. *Id.* at 1118-9. In their summary judgment motion, the Defendants argue that this factor weighs in favor of finding that no employment relationship existed between Time Warner and the Plaintiffs. First, Time Warner argues that Reno Services, not the Defendants, supplied the Plaintiffs with all the tools they needed to perform installations. On the

rare occasion Time Warner did provide the Plaintiffs with tools, Time Warner alleges that Plaintiffs themselves admit they usually returned such equipment the very next day, and these tools, therefore, were not crucial to the Plaintiffs' day-to-day duties . (Doc. 117, p. 22)**.** In their Response, the Plaintiffs claim that they would pick up Customer Premises Equipment ("CPE") daily from Time Warner before starting their routes. This equipment included converter boxes, cable, and phone modems and remote controls. Additionally, the Plaintiffs claim they were "on occasion" provided with a hammer drill, masonry bits, and a wall fish kit. (S. Taylor, 44). They also cite John Carter's testimony, a non-Plaintiff former Reno Services employee, during a deposition in which he stated that Time Warner gave him keys to the lock boxes, a "tap tool," a lock box compression fitting tool, and a wall fish kit. Eden Taylor asserts he "borrowed" drills from Time Warner technicians.

      The very evidence the Plaintiffs cite to support a finding that Time Warner made significant capital investments, however, demonstrates how little involvement Time Warner actually had in providing them the tools for their daily installation duties. At most, they claim that Time Warner occasionally lent them cable installation tools. The fact that Time Warner always provided the cable equipment, not tools,  the Plaintiffs would install does not equate with having made a significant capital investment. Thus, because the evidence upon which Plaintiffs rely does not demonstrate that Time Warner made a significant capital investment into tools required to execute the installation process, a reasonable fact-finder would have to conclude that this factor does not support a finding that Plaintiffs were Time Warner employees.

### iv. Worker's opportunity for profit or loss

If a worker has an opportunity to control his or her profit or loss, then this factor weighs against finding an employment relationship exists among the parties. *Donovan*, 736 F.2d at 1119. In this case, the Defendants argue that they had no control over the Plaintiffs' profits and losses; but rather, Reno Services exclusively determined what the Plaintiffs would be paid, established the Plaintiffs' work schedules, and determined the number of days an installer would work. Further, the Defendants argue that the installers themselves also controlled their profits and losses because they could trade work orders with other installers. (Doc. 117, p. 25) The Plaintiffs assert that Time Warner controlled the amount of work that the contract installers received because they would call Time Warner to try to pick up more work, and in response they sometimes told him no more work was available. Denney also claims that when there was extra work, Time Warner would divide it and reassign the work orders in their computer, thus inhibiting the Plaintiffs' opportunity to control their own profits and losses. (Denney, 117). Based on the evidence Plaintiffs cite, a reasonable fact-finder could determine that Plaintiffs did not have the opportunity to control their profits and losses, and thus conclude that this factor of the *Donovan* test weighs in favor of finding that they were employees of Time Warner and not just independent contractors.

### v. Employer's right to control their work

The Defendants claim that they did not control the manner in which the Plaintiffs performed their work. Time Warner directs this Court's attention to the fact that Reno Services: (1) set the Plaintiffs' work schedule; (2) determined the days each installer worked; (3) determined which installers would be assigned to particular service areas; (4) had full discretion to change an installer's assigned location. Further, the Defendants argue that they did

not control the Plaintiffs' work because they did not directly supervise the manner in which they performed the installations, though they concede that the performed five quality control inspections per month for each of Reno Services's installers. The Plaintiffs argue that Time Warner did in fact exercise a great deal of control over their work. Specifically, the Plaintiffs rely on Denney's deposition in which he recalls having to wait for permission from Time Warner before he could take time off to care for a sick child. (Plaintiff's Ex. 50). Such an incident could support a determination that Time Warner did exercise significant control over the Plaintiffs and would support a finding that an employment relationship existed.

      Additionally, the Plaintiffs assert that their daily schedules while working as installers demonstrate how much control Time Warner exercised. Several of the Plaintiffs allege beginning their days by reporting to a Time Warner facility to receive their work orders. (Keeton, 130; E.Taylor, 37, S. Taylor, 49). The Plaintiffs also claim that once they reported to a Time Warner facility at the beginning of the day, a Time Warner technician would print, organize, and distribute the work orders among the various installers. (Carter, 58; Blanton, 51). They also allege that they then filled out route sheets to give to a Time Warner dispatcher before departing to start their routes. (Blanton, 55; S. Taylor, 51; Denney, 25-26; S. Taylor, 49). Sean Taylor also claims contract installers had to receive permission from the Time Warner dispatcher before they could change the order in which they filled the work orders assigned to them on a particular day. (S. Taylor, 57). Additionally, the Plaintiffs assert that if they wanted to trade work orders, it had to be cleared with the Time Warner dispatcher. (Denney, 24; Carter, 62-63). Plaintiffs were also occasionally informed that another job had been added at the end of their work day. (Denney, 78; J. Carter, 107). Finally, the Plaintiffs also allege that if they had doctor's appointments, they

would inform Time Warner so that the dispatcher could schedule their route around the appointment. (S. Taylor, 73). Taking these facts as true, a reasonable fact-finder could determine that Time Warner controlled the manner in which the Plaintiffs performed their work to a sufficient degree to find that an employment relationship existed.

The Plaintiffs also cite several examples of instances in which it seemed that Time Warner was involved in the firing of contract installers. For example, Keeton claims that he heard directly from a Time Warner employee that she had been responsible for firing Denney because he was absent from a day of work. (Keeton, 173). Sean Taylor also alleges hearing from Darrell Reno several times that, "If Time Warner doesn't want you there, I got to let you go." (S. Taylor, 38). Assuming these allegations are true, a reasonable fact-finder could also find based on this evidence that Time Warner did in fact control the Plaintiff's ability to perform their work and determine that this factor weighs in favor of finding that an employment relationship existed between the Plaintiffs and Time Warner.

### vi. Whether work performed is integral

Additionally, a Court may consider whether the service rendered is an integral part of the alleged employer's business. *Donovan*, 736 F.2d at 1119-20 (citing *U.S. v. Silk*, 331 U.S. 704 (1947). The more integral the work, the more this factor weighs in favor of finding that a worker was an employee rather than an independent contractor.

In this case, there is no question that the installation of cable systems is an integral part of Time Warner's business, which centers around providing cable services. Thus, this factor indisputably weighs in favor of finding that an employment relationship exists between Time Warner and the Plaintiffs.

Given the fact that four of the six *Donovan* factors could be found to weigh in favor of determining an employment relationship existed between Time Warner and the Plaintiffs, a reasonable fact-finder might conclude that the totality of circumstances indicates that the Plaintiffs were in fact employees of Time Warner and not independent contractors. When faced with mixed results from employing the *Donovan* factor test, this Circuit has previously been inclined not to grant summary judgment. *See Imars v. Contractors Manufacturing Services, Inc.*, 165 F.3d 27 (6th Cir. 1998). Thus, this Court, too, now find that a genuine issue of material fact exists regarding the Plaintiffs' employment status, and summary judgment, therefore, is not appropriate under the "economic realities" analysis.

### B.  Joint-Employment Analysis

The Defendants claim that no joint employment relationship exists between Reno Services and Time Warner, and thus they are not required to pay overtime wages to the Plaintiffs. In deciding the issue of joint employment, this Circuit has previously considered the following factors: (1) the interrelation of operations between the companies; (2) common management; and (3) centralized control of labor relations, and common ownership. *Int'l Shoreman*. (quoting *Metro. Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)). Not all factors must be present, however, in order for the Court to determine a joint employment relationship exists. *Id*.

It is undisputed that Reno Services and Time Warner shared neither common ownership nor common management. Darrell Reno was the sole owner of Reno Services and does not claim to have ever held any ownership stake in Time Warner during the time periods in question. Similarly, Darrell Reno never held any leadership positions within the Time Warner

-13-

organization. Conversely, the Plaintiffs make no claim that any Time Warner official was ever part of the formal management structure governing Reno Services. Thus, at issue is: (1) whether Reno Services and Time Warner had interrelated operations; and (2) whether the Plaintiffs were working under a centralized control of labor relations.

In arguing that no genuine issue of material fact exists regarding whether Reno Services and Time Warner jointly employed the Plaintiffs, the Defendants argue that: (1) they did not determine the Plaintiffs' pay rates or methods of payments; (2) they did not pay the Plaintiffs, prepare the Plaintiffs' payroll, or maintain the Plaintiffs' employment records; (3) they did not have the authority to hire or fire the Plaintiffs; (4) they did not control the manner in which the Plaintiffs performed their work; (5) they did not issue the Plaintiffs' tools or uniforms; (6) the Plaintiffs performed skilled services; (7) they did not control the Plaintiffs' profits or losses; (8) the Plaintiffs performed work that is routinely performed by independent contractors throughout the cable industry; and (9) Plaintiffs were not required to perform installations on a permanent basis. Essentially, the Defendants argue that much of the evidence evaluated under the "economic realities" test supports finding that no joint employment relationship existed. Time Warner does not directly address the factors laid out in *International Longshoresman*, and, thus, this Court finds that Defendants have not met their burden of establishing that no genuine issue of material facts exists as to whether they jointly employed the Plaintiffs with Reno Services. A reasonable fact-finder could take the Plaintiffs' claims as true regarding Time Warner's management of Plaintiffs' daily routes to indicate that the Plaintiffs were both working under a centralized control of labor relations and Reno Services and Time Warner had interrelated operations, fulfilling two of the three *Int'l Longshoremen* factors. Thus, this Court

cannot grant summary judgment at this time because a genuine issue of material facts exists as to whether Reno Services and Time Warner jointly employed the Plaintiffs.

In arguing that no genuine issue of material fact exists under either test, the Defendants cite several cases from other jurisdictions where courts have granted cable companies summary judgment on claims for unpaid overtime wages by cable installers. While noting the similar factual circumstances between these cases and the case *sub judice*, this Court does not find any of the cited cases analogous enough to guide our decision in this action.

The Defendants rely on *Jacobson, et al. v. Comcast*, a case from the District Court of Maryland, in support of their summary judgment motion. The district court in that case combined a four-factor test from the Ninth Circuit and additional miscellaneous factors from the Second Circuit to analyze whether the plaintiffs were employees rather than independent contractors. *See Jacobson, et al. v. Comcast Corp., et al.*, 740 F. Supp. 2d 683, 689 (D. Md. 2010) (citing *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470; *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 77 (2d Cir. 2003). The Ninth Circuit four-factor test included consideration of an alleged employer's: (1) authority to hire and fire employees; (2) authority to supervise and control work schedules or employment conditions; (3) authority to determine the rate and method of payment; and (4) maintenance of Employment Records. *Bonette*, 704 F. 2d at 1470. The Second Circuit factors the *Jacobson* court considered were: (1) whether Comcast's premises or equipment are used for Plaintiff's work; (2) whether Plaintiffs are part of a business organization that can shift as a unit from one putative joint employer to another; and (3) whether the contract responsibilities of the direct employer. *Jacobson*, 740 F.Supp 2d at 693 (citing *Zheng*, 355 F.3d at 72). While the second factor of the *Bonette* test and the first factor of the

-15-

*Zheng* test are very similar to two of the factors including in the Sixth Circuit's *Donovan* test, the factors applied in *Jacobson* are hardly identical to the factors used in *Donovan*. Thus, this Court is not persuaded that the *Jacobson* decision should inform its decision in the present case.

The Defendants also rely on *Smilie v. Comcast Corp.*, et al. from the Northern District of Illinois as an analogous case that resulted in a cable company defendant being granted summary judgment. In that case, however, the district court applied the Seventh Circuit's *Moldenhauer* test, which rejected any specific multi-factored test in making a joint employment determination and instead relied on "the specific facts of each case." *Smilie v. Comcast Corp.* et al., Case No. 07-CV-3231, p. 4 (N.D. Ill. 2009). Instead, the district court considered the following when deciding the joint employment issue: (1) whether Comcast had authority to hire contract technicians; (2) whether Comcast supervised day-to-day activities of Contract Technicians or controlled working conditions; (3) if Comcast paid Contract Technicians; and (4) whether Comcast had the authority to fire contract technicians. *See* pp. 1-8. Thus, the Northern Illinois district court did not apply the *Donovan* test, and the considerations they took into account only seem to align with one of the factors in the Sixth Circuit *Donovan* test. This Court is not persuaded, therefore, that *Smilie* should alter our decision regarding whether a material fact exists about the Plaintiffs' employment status relative to Time Warner.

The Defendants further claim that *Santelices v. Cable Wiring* is instructive. In *Santelices*, however, the district court from the Southern District of Florida was deciding whether the plaintiffs were employees of two cable installation independent contractor companies. *See Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313 (S. Fl. 2001). Thus, the court decided whether the facts supported a finding that the independent contracting company rather

than the cable company itself had exercised sufficient control to be an employer. In this case, however, at issue is the Plaintiff's employment status relative to the cable operator. Though both are employment relationships, the Court finds the factual analysis necessary to evaluate whether the cable company employed the installers to be distinct from the one necessary to determine if a installation subcontractor did. Thus, this Court is not persuaded that *Santelices* controls here.

The Defendants also cite three cases that apply a multi-factored analysis identical to the *Donovan* test. In *Dole v. Amerilink*, a district court from the eastern district of Missouri used the 7th Circuit test outlined in *Lauritzen* to determine whether cable installers were employed by Amerilink, a cable operator. *Dole v. Amerilink*, 729 F.Supp 73, 76 (E.D. Mo. 1990). The *Lauritzen* test includes the following factors: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business. *U.S. Dept of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987). Though in applying these factors the *Dole* court granted summary judgment for the cable company, determining that the plaintiffs installers were not employees, the facts in the *Dole* case were distinct from those presented here. In *Dole*, the installers worked almost entirely independently. They hired "helpers" to assist them with completing the installations, a factor the court found persuasive in deciding that the installers were not employees, but rather, had the autonomy of independent contractors. *Dole v. Amerilink*, 729 F.Supp at 76.  The

Defendants in the present case do not allege that any of the Plaintiffs were managing other people when performing cable installations for Time Warner. Further, the cable company in *Dole* did not exercise any day-to-day control over the installers beyond occasional quality control checks. The Plaintiffs in this case, however, have alleged that Time Warner employees were consistently in touch with them throughout the day about their progress on the work orders, suggesting that Time Warner exercised a greater degree of control. The *Dole* court was also persuaded by the fact that the plaintiff installers in that case were responsible for purchasing their own insurance in finding that they were independent contractors. In this case, Time Warner has not alleged that the Plaintiffs purchased their own insurance. Taking all these factual distinctions into account, this Court is, therefore, not persuaded that *Dole* should guide its decision in determining whether a genuine issue of material facts exists about the Plaintiffs' employment status, despite the fact that *Dole* used a test identical to the *Donovan* test.

Additionally, the Defendants also rely on two cases that follow *Dole* in urging this Court to grant summary judgment. The first, *Herman v. Mid-Atlantic Installation Services,. Inc.*, like *Dole*, involved that court analyzing whether the plaintiffs were properly considered employees of the independent contractor installation company, not the larger cable operator. Thus, this court does not find this case analogous to the present action and does not choose to follow it.

Finally, the Defendant Time Warner claims that *Chao* should sway this court to grant its summary judgment motion. *Chao* also involves a court that applied a test identical to the one utilized by the Sixth Circuit in the *Donovan* to determine whether the plaintiffs were employees of the installation subcontractor. In this case, it is not disputed that Reno Services employed the Plaintiffs; rather, the issue is whether the larger cable operator employed the Plaintiffs. Thus, the

issue in *Chao* was distinct, and this Court is not persuaded to follow it in reaching a decision at this summary judgment stage.

## V. CONCLUSION

Because a reasonable fact-finder could conclude that the Plaintiffs were either employed by Time Warner or that Time Warner jointly employed the Plaintiffs along with Reno Services, this Court, hereby, **DENIES** the Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: July 1, 2011**